UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SPEECH TRANSCRIPTION, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**VECTRA AI, Inc.,**<br><br>Defendant | **Case No. 1:23-cv-01528-RP**<br><br>**Jury Trial Demanded** |

## MOTION FOR DEFAULT JUDGMENT

**I.   OVERVIEW**

Pursuant to Federal Rule of Civil Procedure 55(c), Plaintiff Speech Transcription, LLC ("Speech Transcription" or "Plaintiff") respectfully moves for entry of a default judgment against Defendant Vectra AI, Inc. ("Vectra AI," "Vectra," or "Defendant").  Having met its burden, Plaintiff asks that the Court grant this motion, and order the Clerk of the Court to close this case, issuing an award to Plaintiff in the amount of $700,000.00 USD and costs to Plaintiff as the prevailing party in the amount of $402.00.  Plaintiff is not requesting attorney fees and this case is not exceptional under Section 285.

A proposed order and supporting declaration with exhibits is filed concurrently with this motion.

## II. BACKGROUND

1. On December 15, 2023, Plaintiff Speech Transcription filed an Original Complaint for Patent Infringement ("Complaint") against Vectra AI (Dkt. No. 1).

2. The Clerk issued a summons as to Vectra AI on December 18, 2023 (Dkt. No. 4). On December 27, 2023, the summons was served on Vectra AI's registered agent and the proof of service was filed with the Court on January 26, 2023. Dkt. No. 5. (Garteiser Decl., ¶ 2).

3. Pursuant to Federal Rules of Civil Procedure 4(d) and 12, and the Court's docket notice in Dkt. No. 5, Vectra AI was required to answer or otherwise respond by January 17, 2024.

4. To date, Vectra AI has not filed an Answer to Speech Transcription's Complaint, and no attorney has made an appearance on behalf of Vectra AI, Inc. No attorney has otherwise contacted Speech Transcription or its attorneys to discuss an extension to respond to the Complaint.

5. The Court further provided public notice to Vectra AI that on April 19, 2024, it would entertain a motion for entry of default judgment from Plaintiff, which is this motion presently before the Court. Dkt. No. 8.

## II. LEGAL STANDARD

Under Rule 55, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. *Id.* Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). There must be a sufficient basis in the pleadings for the judgment entered. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

After a defendant has defaulted, the plaintiff's well-pleaded factual

allegations are taken as true, except regarding damages. *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see also Nishimatsu*, 515 F.2d at 1206 (stating that the defendant, by default, "admits the plaintiff's well-pleaded allegations of fact"). But a default "is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," and the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu,* 515 F.2d at 1206.

Entry of a default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Under Rule 55(b)(2), a court may hold a hearing to conduct an accounting, determine the amount of damages, or establish the truth of any allegation, but a hearing is unnecessary if the court finds it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.   ARGUMENT

In considering any motion for default judgment, a court examines jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

### A.   Jurisdiction

When a party seeks entry of a default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (citation omitted). In its Original Complaint, Plaintiff asserts its claim for patent infringement arises under 35 U.S.C. § 271, and in doing so states that "Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331(Federal Question) and § 1338(a) (Patents)." Dkt. No. at ¶ 3, ¶ 4.

The Court has personal jurisdiction and venue under Section 1400(b) over Vectra AI. This is evidenced in the Original Complaint where it points too Vectra

AI's website providing a brick and mortar building location in this District at 11921 Mopac Expressway, Suite 100B, Austin, Texas 78759.  Dkt. No. 1 at ¶ 7, ¶ 8.



*Figure 1* – Docket No. 1 excerpt from page 3 of the Original Complaint.

A federal court may assert personal jurisdiction if (1) the state's long-arm statute applies, and (2) due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In Texas, the long-arm statute authorizes exercise of jurisdiction over a nonresident to the full extent compatible with federal due process. *Id*. Personal jurisdiction is proper if two requirements are met:

> First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state.
>
> Second, the exercise of jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice.

*Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 323 (5th Cir. 1996).

To establish minimum contacts, the defendant must have contacts giving rise to either specific or general jurisdiction. Id. at 324. In making a determination of fairness, courts consider: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (*quoting Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987)). Specific jurisdiction exists when (1) a nonresident defendant has purposefully directed its activities at the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019).

Here, the Court should find that Plaintiff has alleged facts sufficient to establish specific personal jurisdiction over Defendant. Plaintiff alleges that its injuries arose because "Defendant sells, advertises, offers for sale, uses, or otherwise

provides exemplary products, including at least the Vectra AI platform, which is used to detect and respond to cyber threats within the different parts of organizations" in Texas. Dkt. No. 1 at ¶ 27.  And Plaintiff shows the Vectra AI even employs Texans and has an office in Texas.  Dkt. No. 1 at ¶ 7, ¶ 8.

Accepting these well-pleaded facts as true, the Court should find that this case arises out of Vectra AI's contact with Texas and that it purposefully directed its activities to and availed itself of this forum. The Court should also find that exercise of jurisdiction over Vectra AI would not be inconsistent with the United States Constitution and laws or "offend traditional notions of fair play and substantial justice." *Felch*, 92 F.3d at 323. As such, the Court has specific personal jurisdiction over Vectra AI.

### B.     Liability

Default judgment is procedurally warranted. The Complaint sufficiently sets forth facts showing that Plaintiff is entitled to relief. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

In determining whether a default judgment is procedurally warranted, district courts consider six factors:

>   (1) whether material issues of fact are at issue;
>   (2) whether there has been substantial prejudice;
>   (3) whether the grounds for default are clearly established;
>   (4) whether the default was caused by a good faith mistake or

excusable neglect;
(5) the harshness of a default judgment; and
(6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

The Court should find that default judgment is procedurally warranted. First, there are no material facts in dispute because Vectra AI has not filed an answer or any responsive pleadings. *Nishimatsu,* 515 F.2d at 1206. Second, Vectra AI's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiff's] interests." *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citation omitted). Third, the grounds for default are clearly established: Vectra AI was properly served and has failed to appear and participate at all, much less timely file a responsive pleading, and the Clerk has entered default against it. *Can Cap. Asset Servicing, Inc. v. Walker*, No. 1:17-CV- 1147-RP, 2019 WL 2298703, at *2 (W.D. Tex. May 30, 2019). Fourth, the Court cannot find a good-faith mistake or excusable neglect because Vectra AI has failed to appear. Fifth, though Plaintiff seeks both monetary damages and injunctive relief, it seeks only that relief to which it is entitled under federal patent law, limiting the harshness of a default judgment. Sixth, "the Court is not aware of any facts that would obligate it to set aside the default if challenged" by Vectra AI. *Id.* For these reasons, the Court finds that default judgment is procedurally warranted.

There is a sufficient basis in the pleadings for the judgment requested. Plaintiff asserts claims for direct infringement, alleging that Vectra AI has "directly infringe, literally or under the doctrine of equivalents, at least claim 14 of the '799 Patent, by having its employees internally test and use these exemplary Accused Instrumentalities." Dkt. No. 1 ¶ 32.

The Patent Act imposes liability on anyone who, without authorization,

"makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To state a claim of direct infringement, "a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s)." *Avus Holdings, LLC v. Iron Lab*, No. 6:22-CV-00134- ADA, 2022 WL 4099748, at *3 (W.D. Tex. Sept. 7, 2022*); see also Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

Here, Plaintiff provides sufficient facts in the Complaint and even provides an element by element claim chart showing infringement by Defendant Vectra AI of Claim 14 of the Patent-in-Suit. Dkt. No. 1-2 (Exhibit B to the Original Complaint). Thus, this condition is met.

### C.    Damages

In the Complaint, Plaintiff asks for injunctive relief, or in the alternative no less than a reasonable royalty pursuant to Title 35 U.S.C. § 284.  Dkt. No. 1 at 9-10. As Plaintiff has not become a competitor yet of Defendant, it foregoes its request for injunctive relief.

A successful plaintiff is entitled to an award of monetary damages "adequate to compensate for the infringement, <u>but in no event less than a reasonable royalty</u> for the use made of the invention by the infringer, together with interest and costs fixed by the [C]ourt." 35 U.S.C. § 284.  Presently, Plaintiff does not have any non-lawsuit induced settlements and those are substantially reduced based on the early stage of the litigation and inherent risk of litigation whereby the patentee provided substantial discounts on its potential recovery at trial. (Garteiser Decl., ¶ 3). As such, they are not appropriate benchmarks and subject to confidentiality provisions with no

protective order presently in place in this case. *Id.*

Defendant's "refusal to engage in this litigation" weakens Plaintiffs ability to enforce its intellectual property rights. The Federal Circuit has ruled that money damages may be inadequate when reputational harm occurs due to confusion between the patentee's product and the accused product. *Reebok Int'l Ltd. V. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994). Additionally, here the balance of hardships favors entry for a permanent injunction because Plaintiffs "should not be punished" for Defendant's failure to participate in this litigation. Additionally, because public policy favors protection of intellectual property rights, a permanent injunction, in this case, will serve public interests. *Id.*

Vectra AI is a privately held company with public reporting of its annual revenue at $121.8 million per year. *See* Figure 2.

> **Headquarters**  550 S Winchester Blvd Ste 200, San Jose, California, 95128, United States
>
> **Phone Number**  (408) 326-2020
>
> **Website**  www.vectra.ai
>
> **Revenue**  $121.8 Million

***Figure 2* – Excerpt from Zoominfo website as last visited on April 19, 2024 at https://www.zoominfo.com/c/vectra-inc/358721601.**

The infringement period for the direct infringement of selling the Accused Instrumentality is six years prior to the service of the lawsuit. The lawsuit was filed on December 27, 2024. Thus, the damages period began on December 27, 2018. The patent expires not until June 7, 2033. Software licenses average 10.5% with a median of 6.8%. Exhibit 1. But for purposes of this default judgment calculation a 1.0% for a reasonable royalty will be used to avoid prejudice to Vectra, who choose not to participate in this proceeding. Vectra's complete business model infringes claim 14

of the patent-in-suit. Thus, 100% of its revenue should be apportioned to the patented technology. But again, to avoid any alleged prejudice to Vectra, only a 20% apportionment will be applied to calculate a lump sum amount. "A lump-sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales." Exhibit 2, *G+ Communications, LLC v. Samsung Electronics Co., Ltd. et al*, 2-22-cv-00078 at fn3 (E.D. Tex. Mar. 1, 2024) (J. Gilstrap).

Thus, calculating a lump sum for the fixed revenue for the infringing conduct lasting 14 years, the lump sum amount Vectra would have agreed to pay Plaintiff Speech Transcription at the start of its infringement, December 27, 2018, under the *Georgia Pacific* Factors would be based Vectra having a minimum revenue of at least $5 million based upon Vectra's own 2018 reporting. Exhibit 6. Specifically, Vectra made Deliotte's 2018 Technology Fast 500, which requires a minimum of $5,000,000.00 USD in revenue annually to make the list. Exhibit 6. In 2018, Vectra touted it being named one of Deliotte's 2018 Technology Fact 500 companies. Exhibit 6. Thus, it would have been advantageous to Vectra, a growth stock, (Exhibit 5) to agree to pay a lump sum royalty upfront based on annual revenue of $5 million, then its present revenue of no less than $121 million. Figure 2. And the amount of that lump sum royalty would be $700,000.00 as calculated below using input from Exhibits 1, 2, 5, 6.

> ($5 million in revenue per year) X (0.20 apportionment percentage) X (0.05 royalty rate) X (6 past years + 8 future years) = $700,000.00 USD

Therefore, Plaintiff Speech Transcription respectfully requests that the Court grant this motion for default judgment in the amount of $700,000.00, which is less than 0.58% of just one year of Vectra's annual revenue. Exhibit 3 (Court awarded default judgment in the amount over $1,606,050.86 USD).

| | |
|---|---|
| Dated: April 19, 2024 | Respectfully Submitted |
| | */s/ Randall Garteiser* |
| | M. Scott Fuller |
| | Texas Bar No. 24036607 |
| | sfuller@ghiplaw.com |
| | Randall Garteiser |
| | Texas Bar No. 24038912 |
| | rgarteiser@ghiplaw.com |
| | Christopher A. Honea |
| | Texas Bar No. 24059967 |
| | chonea@ghiplaw.com |
| | **GARTEISER HONEA, PLLC** |
| | 119 W. Ferguson Street |
| | Tyler, Texas 75702 |
| | Telephone: (903) 705-7420 |
| | Facsimile: (903) 405-3999 |
| | |
| | **ATTORNEYS FOR PLAINTIFF** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system on the date above labelled by the ECF/Pacer system, if any.

*/s/ Randall Garteiser*
Randall Garteiser