**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| ———————————————— | x | |
| | : | |
| SPEECH TRANSCRIPTION, LLC, | : | |
| | : | Case No. 23-cv-1528-RP |
| *Plaintiff,* | : | |
| v. | : | |
| | : | |
| VECTRA AI, INC., | : | |
| | : | |
| *Defendant.* | : | |
| | : | |
| ———————————————— | x | |

**VECTRA AI, INC.'S MOTION TO DISMISS THE COMPLAINT OF SPEECH**
**TRANSCRIPTION, LLC PURSUANT TO FED. R. CIV. P. 12(C)**

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    The '799 Patent ...................................................................................... 2

    B.    Speech Transcription's Complaint........................................................ 3

III.  LEGAL STANDARD.......................................................................................... 4

    A.    *Alice* Prohibits Patenting Claims That Merely Require Generic Computer Implementation of An Abstract Idea.................................................... 4

    B.    Rule 12(c) Motion for Judgment on the Pleadings ............................... 6

    C.    Direct and Indirect Patent Infringement ............................................... 6

IV.   ARGUMENT ...................................................................................................... 8

    A.    Claim 14 of the '799 Patent is Directed to Ineligible Subject Matter.................... 8

        1.    Alice Step One .............................................................................. 9

        2.    Alice Step Two ........................................................................... 12

    B.    Plaintiff Makes No Plausible Allegations of Direct Infringement........................ 14

        1.    Plaintiff Fails to Plausibly Allege Infringement of Critical Claim Elements.................................................................................... 15

        2.    Direct Infringement of a System Claim Cannot be Satisfied by Different Parties ........................................................................ 17

    C.    Plaintiff's Claims for Pre-Suit Indirect Infringement Should be Dismissed ........ 18

V.    CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)..................................................................5, 12

*AK Meeting IP LLC v. Zoho Corp.*,
  No. 1:22-CV-1165-LY, 2023 WL 1787303 (W.D. Tex. Feb. 6, 2023)...................................15

*AlexSam, Inc. v. Aetna, Inc.*,
  No. 3:19-CV-01025 (VAB), 2020 WL 5502323 (D. Conn. Sept. 11, 2020)...........................7

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................. *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................6

*BillJCo, LLC v. Apple Inc.*,
  583 F. Supp. 3d 769 (W.D. Tex. 2022)..................................................18

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ........................................................ *passim*

*Bowlby v. City of Aberdeen*,
  681 F.3d 215 (5th Cir. 2012) .........................................................6

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).......................................................5

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)........................................................7

*Chhim v. Univ. of Tex. At Austin*,
  836 F.3d 467 (5th Cir. 2016) .......................................................8, 15

*Commil USA, LLC v. Vectra Sys., Inc.*,
  135 S. Ct. 1920 (2015)..............................................................8

*CosmoKey Sols. GmbH & Co. KG*,
  15 F.4th at 1096-97 ...............................................................14

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017).....................................................10

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ................................................................................12

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021) ..................................................................................9

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) .................... 7, 14

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ......................................................................................6

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ..................................................................................8

*e-Numerate Sols., Inc. v. United States*,
    149 Fed. Cl. 563 (2020) ............................................................................................10

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ..................................................................................9

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) .............................................................................6, 10

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021) ................................................................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ....................................................................................................8

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017) ..................................................................................7

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ..................8

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974) ..................................................................................................12

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ......................................................................................6

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014) ..........................................................................5

*LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*,
    No. 1:22-CV-1167-RP, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ..........................16

*Lyda v. CBS Corp.*,
　838 F.3d 1331 (Fed. Cir. 2016)..........................................................................................7

*Network Architecture Innovations LLC v. CC Network Inc.*,
　2017 WL 1398276 (E.D. Tex. Apr. 18, 2017).....................................................................6

*NexusCard, Inc. v. Kroger Co.*,
　173 F. Supp. 3d 462 (E.D. Tex. 2016), *aff'd*, 688 F. App'x 916 (Fed. Cir.
　2017) ................................................................................................................................10

*Parus Holdings Inc. v. Sallie Mae Bank*,
　137 F. Supp. 3d 660 (D. Del. 2015), *aff'd*, 677 F. App'x 682 (Fed. Cir. 2017).....................13

*Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*,
　No. 4:19-CV-876-SDJ, 2020 WL 6781566 (E.D. Tex. Nov. 17, 2020)...................................8

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
　2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)...................................7, 17

*SAP Am., Inc. v. InvestPic, LLC*,
　898 F.3d 1161 (Fed. Cir. 2018)........................................................................................13

*SAP Am., Inc. v. InvestPic, LLC*,
　898 F.3d 1166 (Fed. Cir. 2018)..........................................................................................5

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
　873 F.3d 905 (Fed. Cir. 2017)............................................................................................5

*Simio, LLC v. FlexSim Software Prods., Inc.*,
　983 F.3d 1353 (Fed. Cir. 2020)....................................................................................12, 13

*Trading Techs. Int'l, Inc. v. IBG LLC*,
　921 F.3d 1378 (Fed. Cir. 2019)...........................................................................................5

*Universal Secure Registry LLC v. Apple Inc.*
　10 F.4th 1342 (Fed. Cir. 2021), *cert. denied*, 212 L. Ed. 2d 778, 142 S. Ct.
　2707 (2022)....................................................................................................................9, 14

*Vervain, LLC v. Micron Tech., Inc.*,
　2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ..................................................................7, 15, 17

*VOXX Int'l Corp. v. Southwest Dealer Servs.*,
　No. SACV 23-350-GW-MAAx, 2023 U.S. Dist. LEXIS 112942 (C.D. Cal.
　2023) ....................................................................................................................... *passim*

**Statutes**

35 U.S.C. § 101 ........................................................................................................4, 12

35 U.S.C. § 271(a) ....................................................................................................6, 17

35 U.S.C. § 271(b) .........................................................................................................8

35 U.S.C. § 271(c) .........................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 8(a) .......................................................................................................6

Fed. R. Civ. P. 12 .....................................................................................................5, 12

Fed. R. Civ. P. 12(b)(6).................................................................................................6

## I.     INTRODUCTION

Plaintiff Speech Transcription, LLC's ("Speech Transcription" or "Plaintiff") sole asserted patent—U.S. Patent No. 8,938,799 ("the '799 Patent")—is directed to nothing more than the abstract idea of an intermediary that receives and executes security software from multiple vendors. As a result, the claims are patent-ineligible under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and its progeny.

Further, Plaintiff does not plausibly allege that the accused product, the "Vectra AI Platform," meets critical claim limitations. Plaintiff provides a conclusory claim chart alleging infringement of a single system claim by stitching together irrelevant screen captures of Vectra AI, Inc.'s ("Vectra" or "Defendant") website purporting to show that the "Vectra AI Platform" can connect or integrate with third-party technology partners in support of its allegation that the "Vectra AI Platform" is "an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host." But merely sharing data and connecting with third-party technology partners, does not mean that the "Vectra AI Platform" "receive[s] and execute[s] security function software modules from multiple vendors for providing defense functions for protection of the host." Indeed, Plaintiff concedes as much as it alleges that this limitation is met only on "information and belief." Dkt. 1-2 at 3. Moreover, the documents that Plaintiff cites in support of its infringement allegations belie any allegation that Vectra, rather than its customers, is responsible for satisfying the elements of the charted system claim. But infringement of a system claim cannot be divided between multiple parties. Thus, Plaintiff's allegations of direct infringement must be dismissed with prejudice.

Plaintiff's claims of indirect infringement, both inducement and contributory, fares no better. The Complaint contains no specific allegations to plausibly support Plaintiff's claims of indirect infringement, but only conclusory statements. These indirect infringement claims must

also be dismissed with prejudice.

## II.     BACKGROUND

### A.     The '799 Patent

Speech Transcription's Complaint accuses Defendant of infringing only claim 14 of the '799 Patent. *See* Dkt. 1 ¶ 27, 31. The '799 Patent relates generally to the protection and management of endpoint computing systems. Dkt. 1-1 at Abstract. The '799 Patent states that an "endpoint" refers to an "'end-point computing system'… such as a server, a desktop or laptop PC, a PDA or a smart phone, or a set-top box." *Id.* at 1:16-18. The '799 Patent explains that "attacks on computer systems have advanced in variety and sophistication," and that "[s]ecurity functions," such as "defense functions" "work to protect endpoints," and that "[v]arious implementations of these functions are well known in the art." *Id.* at 1:30-41. "Conventionally . . . the host-based deployment [of defense functions] requires multiple defense function software modules to be installed in each host." *Id.* at 3:42-48. "Consequently, a deployed security infrastructure consisting of multiple defense [] functions may burden the host with multiple defense function software." *Id.* at 3:49-52. The '799 Patent explains that this is disadvantageous because it may "burden the host," "may create software conflict and registry corruption issues," and "cause end-user productivity loss and unnecessary IT labor cost." *Id.* at 3:49-58. Accordingly, the '799 Patent provides a "unified security management system," that comprises a "SUB 101, a hardware and software subsystem that may run on its own operating system" that "resides in each endpoint 102." *Id.* at 8:6-10. "The SUB 101 may function . . . as an open platform on which some or all of host-based defense function software modules . . . from various vendors can be downloaded and executed in a Repository and Execution Unit 108" which resides on each endpoint 102 as shown below in Fig. 1B. *Id.* at 8:42-55.



**FIG. 1B**

Claim 14, the sole claim charted in Plaintiff's complaint, recites this basic concept of an intermediary platform that receives and executes security software modules from multiple vendors for providing defense functions for protection of the host:

> 14. A security subsystem configurable between a network and a host of an endpoint, the security subsystem comprising computing resource for providing:
>
> an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host.

### B. Speech Transcription's Complaint

Speech Transcription's Complaint alleges that Vectra "sells, advertises, offers for sale, uses, or otherwise provides exemplary products, including at least the Vectra AI platform" and alleges that the "Vectra AI Platform" infringes Claim 14 of the '799 Patent. *See* Dkt. 1 ¶ 27.

Plaintiff attaches an infringement chart attempting to map system Claim 14 of the '799 Patent to webpages referencing Vectra's AI Platform. *See* Dkt. 1-2. Claim 14 requires a physical element: "an open platform" that "execute[es] security function software modules from multiple

vendors for providing defense functions for protection of the host." But to satisfy this limitation, Plaintiff merely refers to screen captures of Vectra's website that purports to show that the "Vectra AI Platform" can "connect" or "integrate" with its various technology partners. Dkt 1-2 at 3-6. Importantly, Plaintiff's claim chart only states that "upon information and belief, the Vectra AI Platform receives and executes security function software modules from these vendors." *Id.* at 3. Further, the cited excerpts reveal that Vectra's customers rather than Vectra itself are responsible for integrating the "Vectra AI Platform" with Vectra's technology partners. *See* Dkt. 1-2 at 2 ("The Vectra® Threat Detection and Response® platform integration with Falcon Insight™ endpoint detection and response from CrowdStrike® ***enables security teams to unify network and endpoint context*** to detect, verify and isolate cyberattacks in the enterprise quickly and automatically . . . By harnessing Vectra's Patented Security AI with Crowdstrike, ***security teams*** gain full visibility of threats across network and endpoints."), 3 ("The Vectra AI Platform's Open Architecture lets ***you*** connect to 40+ leading security technologies…").

### III.    LEGAL STANDARD

#### A.    *Alice* Prohibits Patenting Claims That Merely Require Generic Computer Implementation of An Abstract Idea

In defining subject matter eligible for patenting, 35 U.S.C. § 101 contains "an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216. Section 101 prohibits patenting claims "which merely require generic computer implementation" of an abstract idea. *Id.* at 221. In *Alice*, the Supreme Court set forth a two-step test for determining whether a claim is directed to such ineligible subject matter.

**_Alice_ step one.** The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts," e.g., an abstract idea. *Id.* at 217. "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to determine if the character

of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (quotation omitted). Where a claim recites "a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," the "functional nature of the claim confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016).

*Alice* **step two**. If a claim is directed to ineligible subject matter, the second step is to "determine whether [any] additional elements transform the nature of the claim into a patent-eligible application" by reciting "an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (quotations omitted). Even if "the techniques claimed are groundbreaking, innovative, or even brilliant, [] that is not enough for eligibility" if "the advance lies entirely in the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1166, 1163 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm." *Id.* at 1168. The "inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but "whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

The two-step *Alice* inquiry is a legal one, which may be decided based on the "intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'" *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (internal citation omitted). Accordingly, this Court, like many others, has addressed patent eligibility at the Rule 12 stage. *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 847

(E.D. Tex. 2014); *Network Architecture Innovations LLC v. CC Network Inc.*, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

### B.    Rule 12(c) Motion for Judgment on the Pleadings

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is not plausible unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In making this assessment, courts may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). But courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility standard. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### C.    Direct and Indirect Patent Infringement

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent." 35 U.S.C. § 271(a); *see also* Fed. R. Civ. P.

8(a); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2:15-cv-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). The Federal Circuit has recognized that its "cases have applied joint infringement to method claims and *not system claims*." *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (emphasis added) (citing *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Instead, "direct infringement by use of a system claim requires a party . . . to use each and every . . . element of a claimed system." *Centillion*, 631 F.3d at 1284 (internal quotation marks and brackets omitted); *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1328 (Fed. Cir. 2017). "[T]o use a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. (internal quotation marks and citation omitted). When the complaint fails to allege that the defendant uses (for system claims) or controls (for method claims) each element of the claim, claims of direct infringement are not plausible and should be dismissed. *See De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020); *AlexSam, Inc. v. Aetna, Inc.*, No. 3:19-CV-01025 (VAB), 2020 WL 5502323, at *15 (D. Conn. Sept. 11, 2020).

Further, a plaintiff cannot satisfy the Iqbal/Twombly standard "by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). When the complaint fails to allege that the defendant satisfies each element of the claim, claims of direct infringement are not plausible and should be dismissed. *See De La Vega*, 2020 WL 3528411, at *7. A conclusory recitation that "merely track[s] the claim language" is "insufficient to give rise to a reasonable inference" of infringement. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-

00487-ADA, 2022 WL 23469, at *7 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8*, 4 F.4th at 1355); see also *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[W]e do not credit conclusory allegations or allegations that merely restate the legal elements of a claim.").

To succeed on a claim of induced infringement, a plaintiff must allege facts showing that the defendant: (1) had actual knowledge of the patent; (2) actively and knowingly aided and abetted a third-party to directly infringe the patent; and (3) had specific intent and action to induce infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006); *see also Commil USA, LLC v. Vectra Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). The Supreme Court has held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

And to succeed on a contributory infringement claim, Plaintiff must allege facts showing that the defendant: (1) directly infringed, (2) had knowledge of the patent, (3) that the component has no substantial non–infringing uses, and (4) that the component is a material part of the invention. *See* 35 U.S.C. § 271(c); *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677, at *6-7 (W.D. Tex. Nov. 28, 2017). Of course, a claim for either induced or contributory infringement also requires an underlying act of direct infringement. *See Qwikcash, LLC v. Blackhawk Network Holdings, Inc.*, No. 4:19-CV-876-SDJ, 2020 WL 6781566, at *5 (E.D. Tex. Nov. 17, 2020) ("Where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed.").

## IV.    ARGUMENT

### A.    Claim 14 of the '799 Patent is Directed to Ineligible Subject Matter

The sole claim charted in the Complaint—Claim 14—is patent-ineligible under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) and its progeny.

### 1.      Alice Step One

Claim 14 of the '799 Patent recites nothing more than the abstract idea of an intermediary platform that receives and executes security software modules from multiple vendors. The preamble of Claim 14 recites a "security subsystem configurable between a network and a host of an endpoint." '799 Patent at 19:47-52. The security system—i.e., the apparatus of the claim—is defined only in terms of the function that it performs: it is configured for "receiving and executing security functions software modules from multiple vendors for providing defense functions for protection of the host." *Id*. The use of this type of "result-focused, functional character of claim language . . . has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). And merely combining multiple modules into one platform—i.e., receiving software from various vendors in a single platform instead of independent platforms—is undoubtedly abstract. *VOXX Int'l Corp. v. Southwest Dealer Servs.*, No. SACV 23-350-GW-MAAx, 2023 U.S. Dist. LEXIS 112942, **11-12 (C.D. Cal. 2023) (finding claims directed to the ineligible abstract idea of "incorporating multiple different operating modes in a single control module of a vehicle security system."); *see also cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1380 (Fed. Cir. 2021) (holding as patent-ineligible a claim for a "platform" which "provides the ability for a participant to use a single loyalty program GUI to make points-based purchases directly from multiple third-party vendor systems via multiple APIs."); *Universal Secure Registry LLC v. Apple Inc*. 10 F.4th 1342, 1353 (Fed. Cir. 2021), *cert. denied*, 212 L. Ed. 2d 778, 142 S. Ct. 2707 (2022) (finding that a system claim which combined multiple existing security techniques including biometric authentication, multi-factor authentication, and authentication using multiple devices to verify the identify of a user in a financial transaction was directed to the abstract idea of "combining long-standing, known authentication techniques.").

The "security sub-system" containing an "open platform" is directed to nothing more than the abstract idea of integrating and managing tools from multiple sources. The claimed system situated "between a network and a host of an endpoint" facilitates exchanges of information between a host system (i.e., corporate, or residential users) and vendor systems. '799 Patent at 19:47-52. In Plaintiff's own words, the system of Claim 14 "protect[s] endpoint computing systems" by "managing, providing, and obtaining security functions." Dkt. 1 ¶ 14.

The security subsystem described in Claim 14 amounts to no more than taking security tools from multiple sources and combining them into one "open platform," which is inherently abstract. "The mere combination of []sources, however, does not make the claims patent eligible." *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096–97 (Fed. Cir. 2016). The abstract idea described in Claim 14 is analogous to a toolbox containing various tools such as a hammer, screwdriver, and saw. Each tool may come from a different source—a hammer from Craftsmen, a screwdriver from DeWALT, and a saw from Makita—and may perform a different function. But even if someone takes these tools and combines them in a single toolbox, the system is merely a result of applying the abstract idea of combining existing sources into a single package without altering the features of any individual tool. *See e-Numerate Sols., Inc. v. United States*, 149 Fed. Cl. 563, 584 (2020) ("The mere combination of data sources, however, does not make the claims patent eligible"); *NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462, 467 (E.D. Tex. 2016), *aff'd*, 688 F. App'x 916 (Fed. Cir. 2017) ("[D]escribing two abstract ideas in connection with each other . . . does not cause either abstract idea to then become a concrete thing."); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055-56 (Fed. Cir. 2017) (holding that claims directed to "configuring a computer system to combine data from multiple electronic data sources" are inherently abstract).

The claim at issue here is akin to those held ineligible in *VOXX.* There, the challenged representative claim was directed to a "multi-mode vehicle security system," that included "a control module wirelessly selectable to operate in one of a plurality of modes . . . a first mode in which the control module functions as a vehicle security system, a second mode in which the control module functions as an upgrade to a remote keyless entry (RKE) system, or a third mode in which the control module functions as a shock sensor upgrade to a vehicle security system." *VOXX,* 2023 U.S. Dist. LEXIS 112942, at *2-3. Plaintiff argued that the claims were directed to a patent eligible "technical improvement" because "typically, vehicles come equipped with particular modes that require installation of particular physical components," but the representative claim "by contrast, involves a single control module programmed to deploy characteristics of several different systems, such as security and remote keyless entry." *Id.* at **9-10. The Court summarily rejected this argument because the concept of "incorporating multiple different operating modes in a single control module of a vehicle security system," is abstract, and the representative claim "is directed to a result without explaining how to achieve the result." *Id.* at **11-12 (citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 484 (D. Del. 2022)). For example, the representative claim "includes no limitations regarding . . . how the modes for the systems come to be integrated into a singular control module." *VOXX,* 2023 U.S. Dist. LEXIS 112942, at *13. The same is true with respect to Claim 14 of the '799 Patent. Claim 14 is directed to a similar abstract idea, combining multiple modules into one platform, without providing any detail as to how the modules are combined other than through conventional computing components and techniques, i.e. receiving and executing software modules.

Plaintiff's conclusory allegation that the claims of the '799 Patent "comprise non-conventional approaches that transform the inventions as claimed into substantially more than

("mere abstract ideas" and "are not drawn to . . . abstract ideas" cannot save the claims. Conclusory allegations are given no weight in Section 101 analysis at the Rule 12 stage. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

And even a novel combination of abstract elements alone is not sufficient to make otherwise abstract ideas patentable. "[N]o patent is available . . . however useful, novel, and nonobvious, unless it falls within one of the express categories of patentable subject matter." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 483 (1974). "In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention," it is important "to ask whether the claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding conventional computer components to well-known business practices.'" *Affinity Labs of Tex.*, 838 F.3d at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016)). Claim 14 of the '799 Patent cannot claim any such improvement because it simply discusses the integration of multiple security software "modules" without any providing any detail regarding an actual improvement of the underlying technology beyond the implementation of computer-based tools used to combine well-known, admittedly conventional, "security modules" offered by other vendors. Dkt. 1-1 at 1:30-41; *VOXX*, 2023 U.S. Dist. LEXIS 112942, at *13; *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (holding that eligible subject-matter in this context "require[s] the claims to be directed to an improvement in the functionality of the computer or network platform itself.").

## 2.      Alice Step Two

Asserted Claim 14 also fails at *Alice* step two because no inventive concept can be identified in the claim. As an initial matter, Plaintiff's conclusory allegation that the '799 Patent contains "inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter" (Dkt. 1 ¶ 21) cannot help it survive a Rule 12 challenge. Federal

Circuit precedent requires those allegations be given no weight. *Simio*, 983 F.3d at 1365.

And while the Complaint alleges that, for example, "deployed security infrastructure consisting of multiple defense [] may burden the host." Dkt. 1 ¶ 15-17. Setting aside that these allegations contain no factual support, the only proposed solution is the abstract idea of putting the various defense software functions into an "open platform." Where, as here, the supposed inventive concept is wholly in the realm of the abstract, the claims do not contain an inventive concept and cannot survive at *Alice* step two. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) (finding claim ineligible at *Alice* step two because "[t]here is, in short, nothing 'inventive' about any claim details, individually or in combination, that are not themselves in the realm of abstract ideas."); *VOXX*, 2023 U.S. Dist. LEXIS 112942, at *16 (rejecting the argument that the representative claim "supplies an inventive concept because at the time of the [invention], the idea of incorporating several modes for security systems into a control module was novel," because "incorporating various functions . . . is itself an abstract idea.")

In addition, Claim 14 only recites generic and conventional computer components (i.e., 'computing resources,' 'network,' and 'endpoint') and functionality for carrying out the abstract idea of combining of well-known and non-novel tools offered by others. *See e.g., Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1366 (Fed. Cir. 2021) (holding "the claimed elements . . . comprise generic computing components—e.g., 'servers'—arranged in a conventional manner and thus do[] not transform the claim into something other than the abstract idea"). Notably, nowhere does Claim 14 recite any computer or software that is an advance over conventional technology. *Parus Holdings Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660, 674 (D. Del. 2015), *aff'd*, 677 F. App'x 682 (Fed. Cir. 2017) (finding the claims at issue lacked an inventive concept because they were not sufficiently specific and did not "reference any customization" of

the hardware and software described in the claims).

And Claim 14 does not recite any unique security methods, but rather, an "open platform" to aggregate already known methods, i.e., a toolbox. This claimed combination recites nothing more than the "combination of long-standing conventional methods" for security which would "yield[] expected results of an additive increase in security" from each individual vendor's module. *Universal Secure Registry LLC*, 10 F.4th at 1353. While "[i]mproving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem," and nothing in the record suggests such a technological improvement. *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1096-97 (Fed. Cir. 2021). "There is nothing in the specification suggesting, or any other factual basis for a plausible inference (as needed to avoid dismissal), that the claimed combination of these conventional [] techniques achieves more than the expected sum of the security provided by each technique." *Universal Secure Registry LLC*, 10 F.4th at 1353. There is nothing in Claim 14 that can save it at *Alice* step two.

Accordingly, Claim 14 of the '799 patent is ineligible under *Alice*.

### B.   Plaintiff Makes No Plausible Allegations of Direct Infringement

The Complaint fails as a matter of law for two reasons: (1) it fails to plausibly allege that the "Vectra AI Platform" meets the "an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host" limitation of Claim 14, and (2) the documents Plaintiff cites to fatally contradict the plausibility of its own direct infringement allegations as Vectra's AI Platform would be deployed and controlled by parties other than Vectra. *See De La Vega*, 2020 WL 3528411, at *6-7.

1.      **Plaintiff Fails to Plausibly Allege Infringement of Critical Claim Elements**

Plaintiff only points to screenshots of Vectra's website that purport that show that Vectra's system can connect or integrate with various technology partners and alleges that because the "Vectra AI Platform's open architecture allows to connect with multiple security technologies for integrated investigations of attacks," and because this alleged "open platform" "provides end-to-end protection" by "integrating multiple security vendors," that "upon information and belief, the Vectra AI Platform receives and executes security function software modules from these vendors." Dkt 1-2 at 3-5. But merely having the ability to connect or integrate with third-party partners does not mean that the accused product receives and executes a "software module" from such third-party partners "for providing defense functions for protection of the host." Indeed, software applications (apps) are designed to be integrated via API to prevent the need for either app to directly access or download the other's codebase of software modules. Plaintiff appears to acknowledge this, and concedes that its allegations are deficient, as it only alleges that the "Vectra AI Platform" receives and executes security function software modules from these vendors," on "information and belief." Dkt. 1-2 at 3.

At best, the infringement charts attached to the Complaint contain attorney-provided language stating, in conclusory fashion, that this limitation is satisfied. But as this Court has found, attempts to parrot claim language without support cannot satisfy the pleading standard. *See Vervain,* 2022 WL 23469, at *7 (quoting *Bot M8*, 4 F.4th at 1355); *see also Chhim*, 836 F.3d at 469 ("[W]e do not credit conclusory allegations or allegations that merely restate the legal elements of a claim."); *AK Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY, 2023 WL 1787303, at *5 (W.D. Tex. Feb. 6, 2023), report and recommendation adopted, No. 1:22-CV-01165-LY, 2023 WL 3035436 (W.D. Tex. Mar. 1, 2023). That is because, as this Court has recognized, such

unsupported allegations "amount to 'blanket assertions of infringement insufficient to put' [a defendant] on notice." *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023) (internal citations omitted).

This pleading deficiency is especially egregious because the applicant of the '799 patent distinguished prior art (U.S. Patent No. 7,058,796 to Lynn ("Lynn")) on the basis that Lynn did not teach "an open platform able to execute security function software modules from multiple vendors." In response to a Aug. 3, 2010 final rejection, the applicant filed an appeal brief on April 1, 2011, arguing that "[t]he examiner failed to point out in Lynn *any* teaching of downloading of security function software modules from multiple vendors for execution by a computing system configured so as to provide open platform functionality." Decl. of K. Padmanabhan, Ex. 1 (Appeal Brief) at 14. This argument was directed toward claim 27 at the time, which ended up issuing as claim 14 of the '799 Patent. *Id.* at 7-8. According to the applicant Lynn's system data store ("SDS") "does not provide the feature of downloading or executing software modules from multiple vendors of software," and therefore, "it is apparent that Lynn does not teach in the cited passage or elsewhere an apparatus that comprises an open platform able to execute security function software modules from multiple vendors." *Id.* In response, the Patent Trial and Appeal Board ("PTAB") on Aug. 8, 2014, reversed the Examiner's rejection with respect to pending independent claim 27 and agreed with the Applicant that "the data stores alone do not constitute additionally executing multiple security function software modules" and that "the Examiner does not identify in Lynn any teaching of a software module at all." Decl. of K. Padmanabhan, Ex. 2 (PTAB Decision) at 4. A notice of allowance was issued thereafter on Nov. 6, 2014, and Examiner stated, "[t]he application has been allowed in view of the decision rendered by the Patent Trial and Appeal Board on 8 August 2014." Decl. of K. Padmanabhan, Ex. 3 (Notice of Allowance) at 4.

Because the limitation, "an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host" was material to overcoming the prior art in prosecution, it "lay[s] at the point of novelty," and pleading infringement "require[s] more than attaching photos of the Accused Products and summarily alleging that each and every limitation is satisfied." *Vervain,* 2022 WL 23469, at *5.

Accordingly, the Complaint has failed to plausibly allege direct infringement and put Vectra on notice as to how it infringes the "an open platform for receiving and executing security function software modules from multiple vendors for providing defense functions for protection of the host" limitation of Claim 14, the sole claim recitation as to how the claimed apparatus is configured to function.

### 2. Direct Infringement of a System Claim Cannot be Satisfied by Different Parties

To properly plead infringement against Vectra, there must be some plausible allegation that Vectra "makes, uses, offers to sell, or sells" the patented invention. 35 U.S.C. § 271(a). "In order to 'make' the system under § 271(a), [a defendant] would need to combine all of the claim elements." *Centillion*, 631 F.3d at 1288. Similarly, "[t]o 'use' the system, [a defendant] must put the claimed invention into service, *i.e.*, control the system and obtain benefit from it." *Id.* at 1286. Here, the documents Plaintiff cites to fatally contradict the plausibility of its own direct infringement allegations as the Complaint fails to advance any theory by which any direct infringement can be satisfied by Vectra. *See Ruby Sands LLC*, 2016 WL 3542430, at *4. For example, the Vectra website documents that Plaintiff relies on expressly indicate that its customers are responsible for integrations with its technology partners in to design and evaluate their own networks. See Dkt. 1-2 at 2 ("The Vectra® Threat Detection and Response® platform integration with Falcon Insight™ endpoint detection and response from CrowdStrike® ***enables security teams***

*to unify network and endpoint context* to detect, verify and isolate cyberattacks in the enterprise quickly and automatically . . . By harnessing Vectra's Patented Security AI with Crowdstrike, *security teams* gain full visibility of threats across network and endpoints."), 3 ("The Vectra AI Platform's Open Architecture lets *you* connect to 40+ leading security technologies…") In other words, any hypothetical infringing network would be deployed and operated by third-parties, not Vectra. But various limitations of a system claim cannot be provided by different parties—each of the limitations must be satisfied by a single infringer. *See Centillion*, 631 F.3d at 1288. "Where, as here, the factual allegations are actually inconsistent with and contradict infringement, they are likewise insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354.

Accordingly, Plaintiff's allegations of direct infringement must be dismissed with prejudice.

### C.    Plaintiff's Claims for Pre-Suit Indirect Infringement Should be Dismissed

Plaintiff also fails to plead any pre-suit knowledge of the '799 patent, as required to support a claim for indirect infringement (inducement or contributory infringement). *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777-78 (W.D. Tex. 2022). Plaintiff similarly fails to plead that the "Vectra AI Platform" has no substantial non-infringing uses, as required to plausibly allege contributory infringement. *Id*. at 782 (dismissing contributory infringement claim because patentee "offer[ed] nothing to support [its] contention" that accused product had no substantial non-infringing uses).

### V.    CONCLUSION

For the foregoing reasons, Vectra respectfully requests that this Court grant Vectra's 12(c) motion and find claim 14 of the '799 Patent invalid as directed to ineligible subject matter and to dismiss the Complaint with prejudice for failure to state a claim.

Dated: May 29, 2024

Respectfully submitted,

/s/ Krishnan Padmanabhan
Krishnan Padmanabhan

Krishnan Padmanabhan
Christopher Thomas Gresalfi
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: kpadmanabhan@winston.com
Email: cgresalfi@Winston.com

Saranya Raghavan
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: sraghavan@winston.com

*Attorneys for Defendant*
*Vectra AI, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on May 29, 2024.

*/s/ Krishnan Padmanabhan*
Krishnan Padmanabhan
