UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SPEECH TRANCRIPTION, LLC,**<br><br>Plaintiff<br><br>v.<br><br>**VECTRA AI, INC.,**<br><br>Defendant. | **Case No. 1:23-cv-01528-RP**<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

**<u>BRIEF IN OPPOSITION TO RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

I.  DISPOSITION OF THIS ISSUE AT THE PLEADING STAGE IS INAPPROPRIATE ................. 1

II. THE PATENT CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101 .................................. 4

    A.  *Alice* Step One – The Claims are Not Directed to an Abstract Idea ............................................ 5

    B.  *Alice* Step Two – The Patent Claims Include an Inventive Concept .......................................... 9

III. CLAIM CONSTRUCTION ................................................................................................................. 12

IV. THE COMPLAINT PLAUSIBLY ALLEGES DIRECT INFRINGEMENT ..................................... 13

V.  DIRECT INFRINGEMENT IS SATISFIED BY DEFENDANT ALONE ......................................... 14

VI. PLAINTIFF PROPERLY PLEAD INDIRECT INFRINGEMENT .................................................... 14

VII.   CONCLUSION .................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121 (Fed. Cir. 2018) ......................... 2, 3

*Accenture Global Servs., GMbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) ................................................................................................................................. 7

*Alibris v. ADT LLC*, 2015 WL 5084231, at *4 and n.7 (S.D. Fla. Aug. 28, 2015) ..................... 1

*Alice*, 134 S.Ct. at 2356 ............................................................................................... 2, 5, 6, 9

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016) ......................... 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................. 15

*Bancorp Servs., L.L.C. v. Sun Life Assur.  Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ................................................................................................................ 2, 7

*Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016) ......... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) ....................................................... 16

*Benson*, 409 U.S. at 64, 93 S.Ct. 253 ........................................................................................ 6

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ............................................. 3, 11

*Bilski*, 561 U.S. 593, 604–605, 611 .......................................................................................... 6

*Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013) .................. 1

*BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ...................................... 6

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) ................................. 3, 4

*DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014) ................ 12

*GreatGigz Solutions, LLC v. East Texas Border Health Clinic d/b/a Genesis Primecare,* Case No 2:21-cv-00370-JRG, Dkt. No. 29 (June 28, 2022 E.D. Tex.) ........................................ 13

*ILife Techs., Inc. v. Nintendo of America, Inc.*, 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) ............5

*In re TLI Commc'ns.*, 2015 WL 627858, at *8 ...................................................................................6

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ...................................................2

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.CT. 1289, 1297 ...........................9

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ...........................2

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011) ................................................................3

*Milliman, Inc. et al. v. Gradient A.I. Corp., et al.*, 1:21-cv-10865, Dkt. No. 43 (D. Mass. March 11, 2022) ..................................................................................................................................3

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019) ...................................................2

*Northwestern University v. Universal Robots A/S et al.*, No. 1:21-cv-00149, Dkt. No. 34 (D. Del. March 28, 2022) ....................................................................................................................3

*PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ..............10, 11

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, 2020 WL 278481 at *4 (W.D. Tex. Jan. 10, 2020) ...............................................................................................................................4

*SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019) .................................................11

*TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020)..................................................5, 7

*Trustees of Columbia University in the City of New York v. Nortonlifelock, Inc.*, 3:13-cv-00808, Dkt. No. 718 (E.D. Va. February 2, 2022)..............................................................................4

*Ultramercial, Inc. v. Hulu*, 772 F.3d 709, 715............................................................................................6

*Voxer, Inc. and Voxer IP LLC v. Facebook, Inc. and Instagram LLC*, 1:20-cv-00655, Dkt. No. 236 (W.D. Tex. February 15, 2022)........................................................................................4

*Westwood One, LLC v. Local Radio Networks, LLC*, 1:21-cv-00088, Dkt. No. 45 (N.D. Ind. January 21, 2022)................................................................................................................4

Plaintiff Speech Transcription, LLC ("Plaintiff") respectfully submits this Brief in Opposition to Defendant's Rule 12(c) Motion for Judgment on the Pleadings [Dkt. No. 16] ("Defendant's Motion"). As will be shown in greater detail herein below, Defendant's Motion lacks merit and should be summarily denied.

## I.   DISPOSITION OF THIS ISSUE AT THE PLEADING STAGE IS INAPPROPRIATE

First and foremost is the obvious fact that this issue is presented to the Court at the pleading stage. As such, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art **as of January 2, 2008**, not to mention a lack of familiarity with the disclosures *and an absence of claim construction*. The claims of the '799 Patent ("Patent Claims) cannot and should not be summarily invalidated simply because Defendant refuses to accept the non-abstract nature of, and inventive concepts captured in, the Patent Claims.

A motion for judgment on the pleadings pursuant to Rule 12(c) "is governed by the same standard as a motion to dismiss for failure to state a claim on which relief can be granted [under Rule 12(b)(6)]." *Alibris v. ADT LLC*, 2015 WL 5084231, at *4 and n.7 (S.D. Fla. Aug. 28, 2015) (citing *Black v. Kerzner Int'l Holdings Ltd.*, 958 F. Supp. 2d 1347, 1349 (S.D. Fla. 2013)). This means that the party against whom the relief is sought *is given the benefit of every inference and doubt*. BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 7:35 (Hon. Robert S. Lasnik) (Robert L. Haig ed., West Group & ABA Section of Litigation, 2d ed. 2005). Accordingly, cases discussed below that address the standards under Rule 12(b)(6) apply equally to Defendant's Motion under Rule 12(c).

Recent Federal Circuit jurisprudence has hampered courts' authority to issue ineligibility determinations at a case's earliest stages. For example, the Federal Circuit has recognized that

resolution of section 101 motions is inappropriate until after claim construction. *See, e.g.*, *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). The Federal Circuit has also recognized that deciding Rule 12(b)(6) motions invoking section 101 requires factual presumptions favoring non-movants (this likewise applies to Rule 12(c) motions since they are governed by the same standards as a Rule 12(b)(6) motion).

For example, In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit acknowledged how factual issues undergird both *Alice* steps. 882 F.3d 1121 (Fed. Cir. 2018). Because a court considering a Rule 12(b)(6) motion and a Rule 12(c) motion must accept a complaint's factual allegations as true, a complaint or counterclaim can recite concrete allegations regarding *Alice*'s underlying factual issues to guard its asserted patents from an early ineligibility determination. *See id.* at 1128; *see also Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (describing presumptions favoring non-movants in this Circuit); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) ("In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.").

When the complaint or counterclaim contains concrete allegations regarding the "claimed combination's improvement to the functioning of the computer," the asserted patents can survive a Rule 12(b)(6) motion at *Alice* step one. *Aatrix*, 882 F.3d at 1128. When the complaint or counterclaim contains concrete allegations that "individual elements and the claimed combination are not well-understood, routine, or conventional activity," the asserted

patent can survive a Rule 12(b)(6) motion at *Alice* step two. *Id.* This applies equally to a Rule 12(c) motion.

Thus, accused infringers invoking section 101 in a Rule 12(b)(6) motion or a Rule 12(c) motion face an uphill battle. It is now well established that patents are presumed valid. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011). Overcoming that presumption demands clear and convincing evidence, even in the eligibility context. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019). Indeed, any fact "pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Plaintiff has not overcome these procedural obstacles.

As shown herein, the Patent Claims are drawn to patent-eligible subject matter. But even if Defendant could prove the Patent Claims are directed to an abstract idea, Defendant has nevertheless failed to establish a lack of factual dispute with respect to the allegations of the Complaint relating to the existence of an inventive concept. For example, Defendant fails to meet its burden to deny the Complaint's factual basis as to "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which is *a question of fact* that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). *See also Aatrix Software, Inc.*, 882 F.3d at 1129 ("[w]hether the claim elements or the claimed combination are well-understood, routine, [or] conventional *is a question of fact*") (emphasis added).

Indeed, courts across the country have denied Rule 12(b)(6) and Rule 12(c) motions based on § 101 at the pleading stage. *See, e.g., Northwestern University v. Universal Robots A/S et al.*, No. 1:21-cv-00149, Dkt. No. 34 (D. Del. March 28, 2022); *Milliman, Inc. et al. v. Gradient A.I. Corp., et al.*, 1:21-cv-10865, Dkt. No. 43 (D. Mass. March 11, 2022); *Voxer, Inc.*

*and Voxer IP LLC v. Facebook, Inc. and Instagram LLC*, 1:20-cv-00655, Dkt. No. 236 (W.D. Tex. February 15, 2022); *Trustees of Columbia University in the City of New York v. Nortonlifelock, Inc.*, 3:13-cv-00808, Dkt. No. 718 (E.D. Va. February 2, 2022); *Westwood One, LLC v. Local Radio Networks, LLC*, 1:21-cv-00088, Dkt. No. 45 (N.D. Ind. January 21, 2022).

## II.     THE PATENT CLAIMS ARE PATENT ELIGIBLE UNDER 35 U.S.C. § 101

Defendant's Motion raises the now customary boilerplate argument that the Patent Claims are invalid because they allegedly fail to recite patent-eligible subject matter. Defendant's Motion is premised on a gross oversimplification of the Patent Claims and the underlying premise that virtually no invention remotely relating to security management systems for protecting computer systems can be patent eligible. Accordingly, Defendant's Motion fails on the merits and should be denied.

As the Court is well aware, the patent claims are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office. *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc., et al.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019). Further, at the pleading stage, the Court is required by law not only to accept all factual allegations in the operative Complaint as true, but also to draw all reasonable inferences in the patentee's favor. *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, 2020 WL 278481 at *4 (W.D. Tex. Jan. 10, 2020).  Here, just as in the *Cellspin* case, the Complaint contains a multitude of specific and plausible statements of fact establishing the non-abstract nature of the Patent Claims and the inventive concepts captured by the Patent Claims.

Defendant's Motion cannot overcome the factual assertions in the Complaint and the factual assertions derived directly from the written specification, and therefore should be denied.

### A.   *Alice* Step One – The Claims are Not Directed to an Abstract Idea

First, with respect to *Alice* Step One, the Patent Claims are not directed to an abstract idea, and the misguided notion that the Patent Claims recite mere "conventional components" is both wrong and entirely irrelevant. *See ILife Techs., Inc. v. Nintendo of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. Jan. 13, 2021) ("the district court erred to the extent that it incorporated conventionality of claim elements at step one"; and "[a] claim is not directed to an abstract idea simply because it uses conventional technology").

Plaintiff argues that the Patent Claims are directed to "abstract idea of an intermediary platform that receives and executes security software modules from multiple vendors." Defendant's Motion at 9. These assertions are based on a gross oversimplification of the Patent Claims.

At the Step One phase, the proper approach is to determine what the Patent Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020).  Such an analysis must remain true to the language of the claims themselves in light of the specification and must be careful to avoid overgeneralizing the claims. *Id.* (citing cases). The focus of the claimed advance over the prior art in this case is a unified security system that provides a repository of defense functions from any participating vendors' software modules. This is not an abstract idea. To the contrary, this is a solution to the technical problem facing the industry in 2004. As stated in the '799 Patent:

> [A] deployed security infrastructure consisting of multiple defense and immunization functions may burden the host with multiple defense function software and a number of agents for supporting the corresponding immunization functions. This situation may create software conflict and registry corruption issues in the host and cause end-user productivity loss and unnecessary IT labor cost for testing and validation, which may be exacerbated as the software upgrade/patch incidences for security functions and

BRIEF IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS                                     5

>operating system increase. It may also create issues such as performance degradation and security vulnerability where security functions may be disabled by malware or human carelessness. In addition, the aforementioned multiple defense and immunization functions are managed by multiple vendors' management systems. The resulting heterogeneous environment gives rise to duplicated processes and technical and management complexity, leading to high total-cost-of-ownership (TCO) and low return-on-investment (ROI).

See '799 Patent at 3:49-67.

Further, an idea is abstract if it has "no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu*, 772 F.3d 709, 715; see also *In re TLI Commc'ns*, 2015 WL 627858, at *8 (An idea is abstract if it "describes a scheme or concept not tied to a particular concrete application"). Although the "precise contours of the 'abstract ideas' category" were not delimited in *Alice*, the Supreme Court and the Federal Circuit have provided some important principles. Namely, the Supreme Court has instructed that mathematical algorithms and fundamental economic and conventional business practices are abstract ideas. See *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Benson*, 409 U.S. at 64, 93 S.Ct. 253 (finding mathematical algorithms patent ineligible); *Bilski*, 561 U.S. at 611 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S.Ct. at 2356 (same for intermediated settlement)).

In addition, claims that "simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer" are also abstract. *DDR Holdings*, 773 F.3d at 1256 (citing *Alice*, 134 S.Ct. at 2359); *see also Ultramercial*, 772 F.3d at 715-16 (finding claims using advertising as a currency as applied to the particular technological environment of the Internet merely recited an abstract idea); *BuySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (finding claims patent ineligible that did nothing more than implement the

abstract idea of creating a "transaction performance guaranty" over a network); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) (finding claims patent ineligible that merely recited "generalized software components arranged to implement an abstract concept on a computer"); *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (finding claims patent ineligible that recited the use of a computer to implement the abstract idea of managing a stable-value protected life insurance policy) (collectively "DDR Holdings Cases").

At issue in the DDR Holdings cases, is that the asserted claims "were recited too broadly and generically to be considered sufficiently specific and meaningful applications of their underlying abstract ideas … [and] in substance were directed to nothing more than the performance of an abstract business practice on the Internet or using a conventional computer." *DDR Holdings*, 773 F.3d at 1256. These types of claims are not patent-eligible. *Id*.

Here, the Patent Claims do not fall within the contours of the DDR holdings cases. They have physical, tangible and specialized components that are directed to more than performance of an abstract idea. *See id*. The Patent Claims an "open platform" that receives and executes "security function software modules." Thus, the Patent Claims have a clear, concrete and tangible form in that they are directed to providing a "security subsystem" with tangible and concrete hardware that has been adapted for that purpose.

Further, courts have found claims are directed to patent eligible matter in two approaches: (1) "whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers;" and (2) "whether the claim is properly characterized as identifying a 'specific' improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (collecting cases) (internal quotation marks omitted).

In this case, the Patent Claims are directed at a solution to a problem specifically arising in the realm of computer networks or computers. As stated in the '799 Patent:

> [A] deployed security infrastructure consisting of multiple defense and immunization functions may burden the host with multiple defense function software and a number of agents for supporting the corresponding immunization functions. This situation may create software conflict and registry corruption issues in the host and cause end-user productivity loss and unnecessary IT labor cost for testing and validation, which may be exacerbated as the software upgrade/patch incidences for security functions and operating system increase. It may also create issues such as performance degradation and security vulnerability where security functions may be disabled by malware or human carelessness. In addition, the aforementioned multiple defense and immunization functions are managed by multiple vendors' management systems. The resulting heterogeneous environment gives rise to duplicated processes and technical and management complexity, leading to high total-cost-of-ownership (TCO) and low return-on-investment (ROI).
>
> *See* '799 Patent at 3:49-67.
>
> In addition, the vast majorities of residential internet users generally do not have sufficient knowledge on computer security, and thus are unlikely to have adequate security protection. Another observation is that the user may experience disruptions that require retries and/or reboots during a security function download, and computer behavior changes after the download. Another observation is that it is generally costly to acquire an adequate number of defense and immunization functions.
>
> *Id.* at 4:38-46.
>
> One practical aspect of security for the residential user is the need to subscribe to and pay for multiple security services. Billing and user payments are largely handled via separate subscriptions, separate bills, and separate payment processes. Another observation is that numerous security vendors in the marketplace are available to provide various solutions to counter various security threats. These vendors desire exposure to potential markets. Users desire exposure to information about available security products that may be subscribed to or otherwise obtained. Despite the existence of information sources on the Internet and

elsewhere, the necessary processes of identifying desirable vendors and products are inconvenient and often time consuming.

*Id.* at 4:50-63.

Password management is integral to overall endpoint security, and is associated with many unmet needs, both for residential users and especially for enterprise endpoint users and IT managers. It is difficult for end users to remember numerous and periodically changing sets of passwords/user IDs, and so end users oftentimes choose not to conform to security policy or practice and instead, for example, write passwords/user IDs information down on a post-on or into a computer file. For end users who do conform to good security practice, may forget their passwords and/or user IDs, and they must typically call a helpdesk and request a password reset in order to re-enter applications, or they must via other means obtain a new password/user ID pair. This process reduces end user productivity and adds an extra load and cost to already burdened helpdesk.

*Id.* at 4:66 – 5:13.

### B.     *Alice* Step Two – The Patent Claims Include an Inventive Concept

As discussed above, the Patent Claims are not directed to an abstract idea. Further, even assuming, *arguendo*, that the Patent Claims are directed to an abstract idea, the Patent Claims nonetheless include an inventive concept.

The second step of the *Alice* analysis requires determining whether a claim that is found to be directed to an abstract idea includes additional elements that transform the nature of the claim into something "significantly more" than the ineligible subject matter. See *Alice*, 134 S.Ct. at 2355. This requires that one "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.CT. 1289, 1297).

As specifically alleged in the Complaint, the Patent Claims capture inventive concepts. Specifically, the Complaint alleges that, as of the Date of Invention in September 2004:

> The claims of the '799 Patent overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

*See* Dkt. No. 1 ¶ 19.

The facts as plead are plainly relevant to the presence of inventive concepts captured in the Patent Claims. These specific factual allegations in the Complaint define the state of the art as of the Date of Invention and provide a basis in fact to conclude that the Patents Claims are indeed patent-eligible.

The Complaint further alleges as follows:

> The claims of the '799 Patent are not drawn to laws of nature, natural phenomena, or abstract ideas. The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

*Id.* at ¶ 20.

> Further, the claims of the '799 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

*Id.* at ¶ 21.

These specific factual allegations, as well as the written specification of the Asserted Patent, define benefits and technological improvements captured in the Patent Claims over the prevailing art as of September 2004. Thus, the Patent Claims are patent-eligible. *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco*

*Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019). Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016).

The inventions of the Patent Claims solve the technical problem facing the industry in 2004 associated with the difficulty of protecting endpoint computing systems and managing, providing, and obtaining security functions. *See e.g.,* Dkt. No. 1 at ¶¶ 14 and 15. Moreover, the fact that the Complaint recites the disclosures and teachings *as taken directly from the written specification* of the Asserted Patent is fatal to Defendant's Motion.

In *Berkheimer*, the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims. *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness") (emphasis added). Of course, the benefits of the inventions, as noted in the Complaint, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by defendant.

Again, the specific factual allegations in the Compliant, which must be taken as true, define benefits and technological improvements captured in the Patent Claims over the prevailing art as of September 2004. These factual assertions are drawn directly from the intrinsic record of the written specification, and explain how the Patent Claims capture unconventional technological improvements over the art. As such, they can be considered as conclusive evidence of the facts as stated. *Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41. Indeed, the invention as claimed has enabled the implementation of a

unified security management system that may be used to form a unified management zone for managed endpoints. Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent eligible. *See Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1301-02 (Fed. Cir. 2016).

Defendant's Motion cannot overcome the factual assertions in the Complaint and the factual assertions derived directly from the written specification, and therefore should be denied.

### III.  CLAIM CONSTRUCTION

Plaintiff asserts that at least the following terms/phrases require construction prior to the Court ruling on Defendant's Motion: (1) "open platform;" (2) "security function software modules; and (3) "defense functions."

For example, Defendant argues that "[t]he security 'sub-system' containing an 'open platform' is directed to nothing more than the abstract idea of integrating and managing tools from multiple sources," *See* Defendant's Motion at 10.  A proper construction of the phrases "open platform," "security function software modules" and "defense functions" is *directly relevant* to the issue of whether "[t]he security 'sub-system' containing an 'open platform' is directed to nothing more than the abstract idea of integrating and managing tools from multiple sources." *See* Defendant's Motion at 10.

Indeed, because Defendant's motion is presented to the Court at the pleading stage, the Court is left with *zero developed record* from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of September 2004, not to

mention a lack of familiarity with the disclosure and the prosecution history of the Asserted Patent.

Further, other courts have previously denied a Rule 12(b)(6) motion to dismiss prior to claim construction, even when the defendant offered to adopt plaintiff's proposed claim constructions. *See, e.g., GreatGigz Solutions, LLC v. East Texas Border Health Clinic d/b/a Genesis Primecare,* Case No 2:21-cv-00370-JRG*,* Dkt. No. 29 (June 28, 2022 E.D. Tex.) ("the briefing demonstrates that much of the record is left undeveloped, and it is clear that numerous disagreements between the parties concerning the *Alice* analysis impinge on the construction of the disputed terms" . . . "further inquiry into issues such as the knowledge of one of ordinary skill in the art as to the disputed terms may be resolved at claim construction" . . . "the Court is not inclined to hypothetically adopt either party's purported claim constructions to push the case to an earlier resolution while such disputes remain").

Accordingly, Plaintiff's Motion is premature and should not be taken up until after claim construction has occurred in this case and the factual record as to the state of the prior art developed.

## IV. THE COMPLAINT PLAUSIBLY ALLEGES DIRECT INFRINGEMENT

Claim 14 recites, *inter alia*, "an open platform for receiving and executing security function software modules from multiple vendors." Defendant appears to argue that this requires that the accused product must receive and execute a "software module" from third-party partners in order for direct infringement by Defendant to be present. This is incorrect.

Claim 14 is a system claim and the phrase "an open platform for receiving and executing" means that the "open platform" must be *capable* of receiving and executing security function software modules. Since claim 14 is not a method claim, there is no requirement that the steps of receiving and executing the security software modules be performed for direct

infringement to take place. The only requirement is that the "open platform" is adapted to do so. Indeed, the infringement chart attached to the Complaint supports this. For example, the infringement chart states "the Vectra AI Platform's open architecture (an 'open platform') *allows* to connect with multiple security technologies for integrated investigations of attacks" (emphasis added), and provides evidence from Defendant's website to support the same. *See* Dkt. 1-2 at 3-6.

Accordingly, the Complaint and accompanying infringement claim chart plausibly alleges direct infringement by Defendant, and puts Defendant on notice as to how it infringes the "an open platform for receiving and executing security function modules from multiple vendors for providing defense functions for protection of the host" limitation of claim 14.

## V. DIRECT INFRINGEMENT IS SATISFIED BY DEFENDANT ALONE

Defendant alleges that "the Vectra website documents that Plaintiff relies on fail expressly indicate that its customers are responsible for integrations with its technology partners in to [sic] design and evaluate their own networks." Defendant's Motion at 17. As discussed in Section IV above, claim 14 merely requires that the "open platform" must be *capable* of receiving and executing security function software modules. This is consistent with the evidence provided in the infringement charts and cited in Defendant's Motion. The fact that Defendant's product "enables security teams to unify network and endpoint context to detect, verify and isolate cyberattacks in the enterprise quickly and automatically" is evidence that Defendant's platform is *capable* of receiving and executing security function software modules.

## VI. PLAINTIFF PROPERLY PLEAD INDIRECT INFRINGEMENT

The Complaint states:

> The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

> Dkt. No. 1 at ¶ 33.
>
> Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '799 Patent. On information and belief, Defendant has also continued to sell the exemplary Accused Instrumentalities and distribute product literature and website materials *inducing end users and others to use its products in the customary and intended manner that infringes the '799 Patent. See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).
>
> *Id.* at ¶ 34. (emphasis added).
>
> At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally *continued to induce infringement* of the '799 Patent, literally or by the doctrine of equivalents, by selling exemplary Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims of the '799 Patent.
>
> *Id*. at ¶ 35. (emphasis added).

Further, the Complaint states as follows with regards to possible pre-suit knowledge of the '799 Patent:

> Defendant has knowledge of its infringement of the '799 Patent, *at least as of the service of the present complaint*.
>
> *Id*. at ¶ 29. (emphasis added)

Accordingly, Plaintiff has plausibly plead indirect infringement in connection with both pre-suit and post-suit knowledge.

## VII.   CONCLUSION

Defendant's Motion should be denied. Plaintiff has plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Further, as shown herein, the Patent Claims are drawn to patent-eligible subject matter, and Defendant has failed to prove otherwise.

/ / / / /

Dated:  June 20, 2024                                     Respectfully Submitted

                                                          */s/ Randall Garteiser*
                                                          Randall Garteiser
                                                            Texas Bar No. 24038912
                                                            rgarteiser@ghiplaw.com
                                                        M. Scott Fuller
                                                            Texas Bar No. 24036607
                                                           sfuller@ghiplaw.com

                                                       **GARTEISER HONEA, PLLC**
                                                       119 W. Ferguson Street
                                                       Tyler, Texas 75702
                                                       Telephone: (903) 705-7420
                                                       Facsimile: (903) 405-3999

                                                       René A. Vazquez
                                                       Virginia Bar No. 41988
                                                       rvazquez@sinergialaw.com

                                                       **SINERGIA TECHNOLOGY**
                                                       **LAW GROUP, PLLC**
                                                       18295 St. Georges Ct.
                                                       Leesburg, Virginia 20176
                                                       Telephone: (703) 89-2244

                                                       Counsel for Plaintiff


### CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on June 20, 2024 with a copy of this document via the Court's CM/ECF system.

                                                        */s/ Randall Garteiser*
                                                          Randall Garteiser